IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

CIVIL ACTION NO. 2:19-cv-158-WOB-CJS

AMY LYNN COGHILL                 PLAINTIFF

VS.        **MEMORANDUM OPINION AND ORDER**

BAYER CORPORATION, ET AL.            DEFENDANTS

   This case arises from Plaintiff's use of "Essure," a contraception device, which she alleges caused her serious harm. Plaintiff alleges product liability claims against Essure's manufacturers.

## FACTUAL AND PROCEDURAL BACKGROUND

   Defendants manufactured and sold "Essure,"[1] an FDA-approved Class III medical device which causes sterilization after implantation in the subject's fallopian tubes. (Doc. 6 at 3-4). In late 2012, Plaintiff's doctor implanted Essure in Plaintiff. (Doc. 6 at 6). Over the next several years, Plaintiff suffered menstrual bleeding, cramping, and pain, and eventually underwent a hysterectomy and bilateral salpingectomy to remove Essure. (*Id.* at 4-5).

   Plaintiff brings this product liability action against Defendants alleging four state-law causes of action: (1) negligent failure to warn, (2) strict product liability, (3) negligence, (4) and negligent misrepresentation. Defendants have moved to dismiss the action, arguing that Plaintiff's claims are preempted by federal law or are insufficiently pled. (Doc. 7).

## ANALYSIS

**A.  Legal standard for motion to dismiss**

   To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible upon its face." *Ashcroft v. Iqbal*, 556

---

[1] Defendants no longer sell Essure. (Doc. 7-1 at 4).

U.S. 662, 678 (2009) (citation and internal quotation marks omitted). While the Court construes the complaint in favor of the complaining party, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

B.  **Preemption under the Medical Device Amendments ("MDA")**

    1. **Background of the MDA**

Congress passed the Medical Device Amendments of 1976 (MDA), 21 U.S.C. § 360c *et seq.*[2] to remedy perceived shortcomings in state tort systems. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316-20 (2008). The MDA requires a manufacturer to obtain "premarket approval" (PMA) from the FDA before selling and marketing a recently developed medical device. *See* 21 U.S.C. § 360c *et seq*.

The PMA process depends on the "classification" level of the medical device. Class III is the highest classification level and reserved for the riskiest of devices. § 360c(a)(1)(C). The PMA application process for a Class III medical device is laborious and difficult. As described in *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316-20 (2008), the process requires the manufacturer to submit a multivolume PMA application to the FDA containing manufacturing processes, advertising, packaging, proposed labeling, samples, and directions and conditions for use. §§ 360c(a)(2)(B), 360e. PMA review effectively function as "federal safety review" of the device. *Riegel*, 552 U.S. at 323.

However, the FDA also engages in a cost-benefit analysis in deciding whether to grant PMA. The FDA "weigh[s] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." § 360c(a)(2)(C). The FDA may "approve devices

---

[2] All statutory references herein cite the MDA unless otherwise noted.

2

that present great risks if they nonetheless offer great benefits in light of available alternatives." *Riegel*, 552 U.S. at 318.

If the FDA grants PMA, the manufacturer is bound by the elements of the approved PMA application that relate to the safety or effectiveness of the device and any conditions imposed by the PMA order. *Id*. at 319; 21 C.F.R. § 814.40. This includes the device's packaging and labeling. Consequently, the manufacturer must receive FDA approval before making changes to packaging and labeling. § 360e(d)(5)(A); 21 C.F.R. § 814.39.

A manufacturer who gains Class III PMA is also subject to ongoing reporting requirements. The manufacturer is required to file periodic reports with any new information about the device to ensure that the device is not "adulterated or misbranded and to otherwise assure its safety and effectiveness." § 360i; 21 C.F.R. § 814.84. The manufacturer must keep records and file reports when the medical device causes injury, death, and other "significant adverse device experiences." *Id.* The FDA may include device-specific reporting duties in the PMA order as well. 21 C.F.R. § 814.82.

**2. Preemption under the MDA**

Causes of action brought under state law may be expressly or impliedly preempted by the MDA.

First, section 360k of the MDA precludes any state law claim that imposes requirements "different from, or in addition to, any requirement applicable under this chapter to the device…". 21 U.S.C. § 360k. Under § 360k, the first question is whether the medical device is subject to federal requirements. *Riegel*, 552 U.S. at 321. If so, the second question is whether the asserted state-law claims impose requirements "different from, or in addition to," the federal requirements. *Id.* at 330. State law claims that require the medical device to be "safer … than the model the FDA

3

has approved" are expressly preempted. *Riegel*, 552 U.S. at 325. However, state law requirements that merely "parallel" federal requirements are not preempted by the MDA. *Id.* at 330.

Second, the Supreme Court has recognized that the MDA may impliedly preempt a state cause of action. In *Buckman Co. v. Plaintiffs Legal Comm.*, a plaintiff sued a medical device manufacturer for allegedly making fraudulent representations to the FDA during the PMA application process. 531 U.S. 341, 347 (2001). The Court held "state-law fraud-on-the-FDA claims" conflicted with the FDA's power to punish and deter fraud to "achieve a somewhat delicate balance of statutory objectives," including the approval of dangerous medical devices for the lack of better alternatives. *Id.* at 348. Allowing state tort systems to review the FDA's decision to approve a Class III device during the PMA process could conflict with those objectives. *Id.* at 350. Consequently, the Court held that state claims arising "solely from the violation of FDCA requirements" without any counterpart in state law are impliedly preempted. *Id.* at 353.

### a. Count I and II – Negligent Failure to Warn and Strict Products Liability for Failure to Warn

Plaintiff's first two counts allege negligent and strict product liability for the failure to warn on the theory that Defendants failed to update Essure's labeling and warning materials and failed to report certain "adverse events" to the FDA.

Plaintiff's first theory concerns Essure's labeling and warning materials. Such claims risk implied preemption because an attack on FDA-approved labeling and warning materials undermines the FDA's prerogatives in medical device regulation.[3] *Cupek v. Medtronic, Inc.*, 405 F.3d 421, 424 (6th Cir. 2005).

---

[3] Plaintiff argues Defendants could have changed Essure's labeling and warning materials without FDA approval using the "Changes Being Effected" process. 21 C.F.R. § 814.39(d). However, the "changes being effected" process states a manufacturer "may" effect such changes to enhance safety. *Id.* A state law requiring action which is optional under federal law is preempted, and thus this argument is preempted. *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005); *In re Medtronic, Inc., Sprint Fidelis Leads Products Liab. Litig.*, 623 F.3d 1200, 1205 (8th Cir. 2010).

However, here the complaint alleges that Defendants deviated from the packaging and labeling materials approved by the FDA. (Doc. 9 at 11; Doc. 6 at ¶ 61a). Plaintiff argues such a claim is not impliedly preempted because it does not usurp the FDA's role in medical device regulation but rather provides an additional reason for Defendants to comply with the federal requirements. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996).

However, Plaintiff's claim must still overcome express preemption.[4] Here, the state law claim is based on Kentucky's misbranding provisions. To overcome express preemption, therefore, those misbranding provisions must "parallel" Essure's federal requirements.

At this stage, the Court cannot compare Kentucky's misbranding provisions with Essure's labeling requirements. Defendants filed several documents that describe some elements of Essure's labeling must requirements, but they do not set forth Essure's substantive requirements or purport to contain all Essure's labeling requirements. (Doc. 7-9 at 4, 7; Doc. 7-10 at 25). District courts facing similar situations have found it difficult to compare "the particular state and federal requirements at issue" on a motion to dismiss when the specific federal requirements are absent from the record. *Waltenburg v. St. Jude Medical, Inc.*, 33 F. Supp. 3d 818, 836-39 (W.D. Ky. 2014); *Hawkins v. Medtronic, Inc.*, 909 F. Supp. 2d 901, 908-09 (S.D. Ohio 2012).

Any argument that Essure's FDA-approved labeling and warnings are deficient is impliedly preempted. However, a state claim which only provides an additional reason for manufacturers to comply with federal regulations does not implicate the concerns noted in *Buckman*. While such a claim could be expressly preempted if the state law adds to, or differs

---

[4] Essure is a Class III medical device that received PMA from the FDA. (Doc. 6 at 6, 11; Doc. 9 at 3). An approved Class III device must be made with "almost no deviations from the specifications in its approval application, for the reason that the FDA has determined that the approved form provides a reasonable assurance of safety and effectiveness." *Riegel*, 552 U.S. at 321-23; *Kemp*, 231 F.3d 216, 226 (6th Cir. 2000). Thus Essure is subject to federal requirements.

5

from, Essure's federal requirements, at this point the Court is unable to compare Essure's federal requirements with Kentucky's state misbranding provisions. Accordingly, the Court will deny the motion to dismiss on this theory.

Plaintiff's second theory for her failure-to-warn claim is that Defendants failed to report "adverse events" concerning Essure to the FDA as required by Essure's PMA approval. (Doc. 7-9 at 5, Doc. 6 at 6-7).

To survive express preemption, the state law upon which a claim is based must be parallel to these "adverse events" requirements. Kentucky law imposes a duty to warn foreseeable users or the "learned intermediary" of known dangers of using a medical device. *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990); *Prather v. Abbott Labs.*, 960 F.Supp.2d 700, 708 (W.D. Ky. 2013). However, there is no express federal requirement that Defendants report "adverse events" to Plaintiff or her doctors. Conversely, there is no state law requirement that Defendants warn the FDA; rather, the duty is owed to Plaintiff or her doctors. Thus it would seem the two schemes are not parallel.

However, Plaintiff argues that the way in which adverse events are reported to the FDA shows that the state requirements merely parallel the federal requirement. In the context of medical devices, the manufacturer files adverse event reports by entering the information into the FDA's "Manufacturer and User Facility Device Experience Database" (MAUDE). This database is available to the medical community and to the public. Plaintiff argues that a manufacturer complies with Kentucky's duty to warn by timely using the MAUDE system, which is no more than what Essure's regulations require. Accordingly, Kentucky law does not impose any extra or different requirements to Essure's federal requirements. Plaintiff points out that other federal courts have found similar allegations sufficient to survive a motion to dismiss. *See Waltenburg*, 33 F. Supp.

3d at 838–40 (finding that a federal requirement to publicly file FDA safety reports was sufficiently parallel to the Kentucky's duty to warn to overcome a motion to dismiss).

Considering the procedural posture of the case, it would be premature to apply express preemption to this theory. Kentucky's duty to warn necessitates reporting of Essure's risks to Plaintiff and her doctors; Essure's federal requirements require reporting to the FDA through the MAUDE system, which is then available to Plaintiff and her doctors. The record is insufficient at this stage to determine whether Kentucky's requirements add to, or differ from, Essure's federal requirements that Defendants file "adverse event" reports.[5]

However, there is still the issue of implied preemption. Courts have taken two approaches to the implied preemption of a failure-to-warn claim based on the failure to file adverse event reports with the FDA. The first is to find such claims preempted because the MDA gives the FDA exclusive power to enforce the MDA's reporting requirements and to deter fraud. *See Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017) (such a claim "based on a duty to file a report with the FDA" which is "very much like the 'fraud-on-the FDA' claim" in *Buckman*); *Sprint Fidelis Leads Products Liab. Litig.*, 623 F.3d at 1205 (such a claim is "simply an attempt by private parties to enforce the MDA").

The second approach is to distinguish *Buckman* and reason the claim does not usurp the FDA's role but only provides another incentive to the manufacturer to comply with federal requirements. *See Stengel v. Medtronic*, 704 F.3d 1224, 1231 (9th Cir. 2013) (such a claim "is a state-law claim that is independent of the FDA's pre-market approval process that was at issue in

---

[5] Defendants argue that "adverse event" reports are not warnings under Kentucky law, and thus a failure to provide adverse events is not a failure to provide warnings in Kentucky. In support, they cite instances where "adverse event" reports have been called unreliable or "anecdotal information." However, these reports contain information, even if unreliable or anecdotal, that could be relevant to a potential consumer or doctor prescribing Essure.

7

*Buckman*."); *Hughes v. Boston Scientific Corp.*, 631 F.3d 762, 775 (5th Cir. 2011) ("The plaintiffs in *Buckman* were attempting to assert a freestanding federal cause of action based on violation of the FDA's regulations…In contrast, [plaintiff] is asserting a [state] tort claim based on the underlying state duty to warn about the dangers or risks of product); *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010).

The Sixth Circuit has not squarely addressed this issue. In *Kemp*, the court dismissed a failure-to-warn claim on procedural grounds but expressly declined to opine on any argument that the defendant had "acquired information subsequent to the FDA approval" that, if reported, "would lead a reasonable manufacturer to warn patients and the medical community" under state law. *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 235 (6th Cir. 2000). And in *Cupek*, the Sixth Circuit affirmed the dismissal of failure-to-warn claim but limited the scope of the dismissal to any argument that "Defendant failed to warn patients beyond warnings required by the FDA…". *Cupek*, 405 F.3d at 422-24 (emphasis added).

Consequently, the only definite conclusion that may be drawn is that state claims attacking the sufficiency of FDA-approved requirements for Class III medical devices are preempted, as are claims that are solely based on the violation of federal law. In the current posture, Plaintiff's claim does not seem to fall into either category. In *Buckman*, there was no allegation that a state law was violated; the Court held the plaintiff's claim "exists solely by virtue of the FDCA disclosure requirements" because it "would not be relying on traditional state tort law which had predated the federal enactments in questions." *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353, (2001). But here, the claim rests on state common law. Moreover, the Supreme Court's concern in *Buckman* was voiced in the context of the PMA process, as the FDA exercises a balancing test in

8

deciding whether to grant PMA. Here, Essure had already received PMA, and the state cause of action merely seeks to enforce its provisions.

In sum, the Court cannot find at this stage that Plaintiff's theories for Counts I and II are expressly or impliedly preempted. Interpreting the complaint in the Plaintiff's favor, Plaintiff's claims are based on violations of state law for conduct that violates Essure's federal requirements. Put another way, Plaintiff is suing for conduct that violates the MDA, but not because the conduct violated the MDA. *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013). Thus, Defendants' motion to dismiss Claim I and II will be denied.

### b. Causation

Defendants also argue that even if Plaintiff's claims are not preempted, her failure-to-warn claims fail because she does not allege a plausible "causal link" between Defendants' inactions and Plaintiff's injuries. The Court disagrees. The complaint alleges that if Defendants had filed timely adverse event reports to the FDA using the MAUDE database, it would have "effectively warned physicians, including Plaintiff's physicians, of those adverse events both directly and through discussion of those events that would have followed in the literature and at meetings." (Doc. 6 at ¶ 28). The MAUDE database is available to the medical community and to the public, and thus plausibly could have deterred Plaintiff from using Essure.

### C. Count III – Negligence

#### 1. Negligent Manufacturing

Plaintiff's next claim is that Defendants negligently manufactured Essure.[6] As set forth above, Defendants received FDA-approval of Essure's manufacturing processes and thus any attack on those processes is preempted. However, Plaintiff contends she is not attacking the FDA-

---

[6] To the extent that Plaintiff alleges that Defendants negligently designed Essure, such an argument is preempted because the design of Essure was expressly approved by the FDA.

9

approved processes, but rather arguing Defendants did not manufacture Essure in accordance with those processes. (Doc. 6 at ¶ 47). Defendants counter that even if that were the case, the complaint fails to allege any manufacturing deviation sufficiently enough to meet the pleading standards under Rule 8 of the Federal Rules of Civil Procedure.

The Court finds that this claim is pled sufficiently to survive the motion to dismiss. However, the Court cautions plaintiff that should discovery not produce any facts to support this cause of action, she is under an ethical obligation to dismiss it.

### 2. Negligent Failure to Train

Plaintiff's complaint alleges Defendants negligently failed to train doctors in the installation and use of Essure. Plaintiff did not respond to Defendants' arguments presented in the motion to dismiss, and thus the negligent failure-to-train claim will be dismissed. *See Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007).

### 3. Count IV – Negligence Per Se

Plaintiff voluntarily waived her negligence per se claim against all Defendants in her response brief, and thus the Court will dismiss this claim. (Doc. 9 at 21).

### 4. Count V – Negligent Misrepresentation

Plaintiff's last cause of action alleges negligent misrepresentation. As with the claim for negligent manufacturing, the Court will allow this claim to proceed but cautions plaintiff that any claim unsupported by evidence adduced during discovery should be dismissed.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that:

(1) Defendants' motion for dismiss (Doc. 7) be, and is hereby, **GRANTED IN PART AND DENIED IN PART**, consistent with this opinion; and

(2)   Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the parties shall confer no later than **September 14, 2020** to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1), and to develop a proposed discovery plan. Such proposed schedule shall be filed no later than **September 21, 2020**.

This 25th day of August 2020.



Signed By:
_William O. Bertelsman_  WOB
United States District Judge